898 So.2d 1031 (2005)
Charles MURPHY, Appellant,
v.
STATE of Florida, Appellee.
No. 5D04-1095.
District Court of Appeal of Florida, Fifth District.
March 11, 2005.
Rehearing Denied April 19, 2005.
James S. Purdy, Public Defender, and Scott Ragan, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Robin A. Compton, Assistant *1032 Attorney General, Daytona Beach, for Appellee.
SHARP, W., J.
Murphy appeals from a final judgment of conviction and sentence for possession of cocaine.[1] He filed a motion to suppress evidence of cocaine seized by a police officer who entered his motel room without a warrant.[2] The trial court denied his motion. It also found the motion was "dispositive."[3] Murphy entered a no contest plea and reserved his right to appeal. We have jurisdiction and we affirm.
The record in this case is sparse. At the hearing on the motion to suppress, the state called only one witness, Officer Morford, and the defense called none. Morford testified that he was a patrol officer with the Daytona Beach Police Department and had five years of experience in narcotics investigations and arrests. He and his partner, Officer Youngman, were called by their supervisor to do a "knock and talk" at room 109 of a motel located on the north side of Atlantic Avenue.[4] The Police Department had received complaints that contraband was being sold out of that room. The owner of the motel told Officer Youngman that Murphy had been residing in room 109 for a couple of weeks.
The two officers approached Murphy's room from a patio area where chairs were placed along the walkway. The defense agrees that the two officers were standing in a public area when they knocked on the door.[5]
Murphy answered the knock and opened the door. Officer Morford testified that within seconds of the door opening he saw, and instantly recognized as cocaine, a white powder substance in two baggies, on a table five or six feet inside the room.
Murphy stepped out of the room. Officer Youngman immediately arrested him and had him sit in a chair in the patio, outside the room. Officer Morford entered the motel room, seized the baggies, and tested them for cocaine. The field test proved positive.
After Officer Morford was in the motel room and after he seized the cocaine, he noticed that there was another person in the room  a young female.
On cross-examination, the defense asked him if he had any specific facts to indicate that his safety was in jeopardy in any way, prior to entering the motel room. He responded he did not believe he was in any danger. The defense asked if there were any specific facts to indicate, prior to entering the room, that the evidence (cocaine) could or would be destroyed. Officer Morford first responded that "there's also a potential" but he admitted he had no *1033 specific facts he was aware of that the evidence would be destroyed.
Based on these facts, the trial judge ruled that the police officer had the right to seize the contraband because it was in plain view and because there were exigent circumstances that excused the Fourth Amendment mandate to obtain a warrant prior to entering a private residence to seize evidence of a crime.
A ruling on a motion to suppress comes to the appellate court as presumptively correct as to disputed facts and all reasonable inferences and deductions drawn from them. See Pagan v. State, 830 So.2d 792 (Fla.2002); Morris v. State, 749 So.2d 590 (Fla. 5th DCA 2000). However, the trial court's application of the law to the facts is reviewed under the de novo standard. Phuagnong v. State, 714 So.2d 527 (Fla. 1st DCA 1998).
The Fourth Amendment to the United States Constitution and article 1, section 12 of the Florida Constitution guarantee the right to be free from unreasonable searches and seizures, in a constitutionally protected place; i.e., here a rented motel room, which is legally the equivalent of a lawful tenant's residence.[6] Absent exigent circumstances, warrantless searches and seizures from a constitutionally protected place are per se unreasonable and the state has the burden to establish any exception to the requirement of obtaining a warrant prior to a search or seizure in a protected place. See Davis v. State, 834 So.2d 322 (Fla. 5th DCA 2003); LaFave, 3 Search and Seizure, § 6.1(b) at 375 (4th ed. 2004).
The state and the defense agree that an item may be seized from a constitutionally protected place without a warrant if: 1) the police view the contraband from a place they have a legitimate right to be; 2) the incriminating character of the contraband is immediately apparent to the viewing police officer; and 3) the police officer has a lawful right of access to the contraband. See Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); Rimmer v. State, 825 So.2d 304, 313 (Fla.2002). If one of these requirements is not met, then the state must establish an exception to the warrant requirement, such as consent or exigent circumstances.[7]
The trial court justified the warrantless seizure partially on the ground that the contraband was in plain view from the patio area where Officer Morford was standing when he first saw it. However, the Florida Supreme Court in Ensor v. State, 403 So.2d 349 (Fla.1981) distinguished the plain-view situation, which permits a warrantless seizure, from an open-view situation, which may not.[8] In the plain-view situation, the officer has a constitutional right to be in the place where the seizure is made.[9] In an open-view *1034 situation, the officer sees the contraband from a place he or she has a right to be, outside a constitutionally protected area, but may not have constitutional access to the place the contraband is located when seized. In such cases, there must be a Fourth Amendment exception, such as exigent circumstances, to justify the warrantless entry and seizure. See Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Ensor.
Murphy argues that there is no basis in this record to conclude, as the trial judge did, that there were any exigent circumstances that justified Officer Morford's dashing into Murphy's motel room and seizing the contraband without first obtaining a warrant. Murphy had been arrested and was seated outside the room. The officers had no reason to think there was anyone else in the room. They could have sealed off the room, held Murphy in custody, and obtained a warrant prior to the seizure.
The fact that there was another person in the room who could have destroyed the contraband during the time the officers sealed off the room and went to obtain a search warrant is a problem for the defense in this case.
The cases which have dealt with this kind of issue appear to turn on a determination of whether a reasonable police officer had an objective basis to conclude that there was not sufficient time to seal off the constitutionally protected area and obtain a search warrant before the contraband could or likely would be destroyed, looking at the facts known to the police officer at the moment of entry.[10]
Because of their nature, drugs are different. They are easily and quickly disposed of. If persons in possession of drugs in a residence are aware that the police are on their "trail," or that they suspect drugs are inside the residence, it is reasonable for the police to conclude they do not have time to obtain a search warrant before entering and seizing the contraband because the drugs will likely be destroyed or disposed of.[11] Courts have summarized these as "now or never" situations.[12]
In Gilbert v. State, 789 So.2d 426 (Fla. 4th DCA 2001), the court concluded that entry of police officers into a motel room without a warrant did not violate the defendant's fourth amendment rights. In that case, police officers were asked to go to the defendant's room at a motel for other reasons. When the door was opened by the defendant, they saw contraband on the dresser. The police officers entered the room, seized the drugs, and arrested the defendant. The court concluded that the entry and seizure were justified by exigent circumstances  imminent destruction of evidence when the possessor of the drugs was aware the police were on his trail.
*1035 Cases reach the opposite conclusion if the circumstances objectively establish the occupants of the residence are unaware that the police know or suspect drugs or contraband are in the residence and there is time to seal off the residence and obtain a search warrant.[13] Another line of cases reach this result also, in circumstances where the police have no objective basis to think there is another person or persons in the residence and the residence can be sealed off without any danger of having the contraband destroyed while a warrant is being obtained.[14]
Murphy argues that his case is similar to Vasquez v. State, 870 So.2d 26 (Fla. 2d DCA 2003), which concluded that the search and seizure of evidence in a motel room was not justified by exigent circumstances or a protective sweep. In that case, officers saw, from the public hallway, drugs, drug paraphernalia and a bullet on a table in the room when one defendant opened the door to their knock. The police officers arrested and detained both of the residents of the motel room in the hallway.
Thereafter, the police officers entered the room and found evidence, which tied the two residents to a robbery. The defendants were being prosecuted in that case for the robbery, not possession of the contraband. Vasquez might be applicable to this case if Murphy were being prosecuted for the additional contraband discovered in the search following the police officers' entry into his room.
The Vasquez court stressed that the officers had no reason to suspect a third person was inside the room under the circumstances of that case, and therefore, there was time to obtain a search warrant and no exigent circumstances. The state attempted to justify the search as a "protective sweep." The court disposed of that argument by ruling the officers lacked a rational basis to believe the area to be swept harbored an individual posing a danger to those on the arrest scene.
In the instant case, the trial court concluded there were exigent circumstances and no argument was made about a protective sweep. Further, Murphy was prosecuted only for possession of the items seen through the open door  not the other contraband found and seized later.
This is a close case, but we agree there were exigent circumstances that allowed Officer Morford to enter the motel room. The police officers had not placed this motel or room under surveillance and they had no information, one way or the other, as to whether anyone else was in room 109 besides Murphy. Murphy did not tell them he was alone. The officers also had been told drugs were being sold out of this room.
We conclude, based on these objective facts and the nature of the discovered contraband, it was not unreasonable for Officer Morford to make sure no one else was in the room, ready to destroy the evidence. Officer Morford also knew, based on his experience dealing with narcotics offenses, that drugs are easily disposable. He mentioned that destruction of the contraband prior to the time he could obtain a warrant, was a "possibility."
We agree with the trial judge that because of the easily destructible nature of the contraband seen through the open door and because anyone else in the room would have known the police knew about *1036 the presence of the drugs in the room, exigent circumstances existed justifying Morford's entry into the room. It would have been improvident for Officer Morford to seal off the room without making sure no one else was in the room or had access to it, under the circumstances of this case. Once he entered the room and discovered the additional person inside, he was entitled to seize the contraband in plain view.[15]
AFFIRMED.
GRIFFIN and PLEUS, JJ., concur.
NOTES
[1] § 893.13(6)(a), Fla. Stat. (2003) (a third degree felony).
[2] After the police officer seized the cocaine seen prior to entering the motel room, police officers searched the room and seized additional contraband, on which the state has declined to base its prosecution.
[3] See § 924.051(4), Fla. Stat. (stating that if defendant pleads nolo contendere or guilty without "expressly reserving the right to appeal a legally dispositive issue" the defendant may not appeal the judgment). See also State v. T.G., 800 So.2d 204 (Fla.2001) (failed to preserve); West v. State, 888 So.2d 730 (Fla. 5th DCA 2004) (same); Kearse v. State, 858 So.2d 1247 (Fla. 5th DCA 2003) (same); Binder v. State, 853 So.2d 537 (Fla. 5th DCA 2003) (same); Jones v. State, 806 So.2d 590 (Fla. 5th DCA 2002) (issue not dispositive).
[4] A "knock and talk," Morford explained, is a procedure used by police officers to investigate a complaint where there is no probable cause for a search warrant. The police officers knock on the door, try to make contact with persons inside, and talk to them about the subject of the complaints.
[5] State v. Carr, 549 So.2d 701 (Fla. 4th DCA 1989).
[6] See United States v. Rivera, 825 F.2d 152 (7th Cir.1987); Turner v. State, 645 So.2d 444 (Fla.1994); Gilbert v. State, 789 So.2d 426 (Fla. 4th DCA 2001).
[7] See State v. Futch, 715 So.2d 992 (Fla. 2d DCA 1998); Younger v. State, 433 So.2d 636 (Fla. 5th DCA 1983).
[8] Some of the older Florida cases were decided on this basis. See State v. Carr, 549 So.2d 701 (Fla. 4th DCA 1989); Winchell v. State, 362 So.2d 992 (Fla. 3d DCA 1978). However, Ensor v. State, 403 So.2d 349 (Fla.1981), has changed to a simpler approach.
[9] See Turner v. State, 645 So.2d 444 (Fla.1994)(officers legally inside motel room may seize evidence in plain view); Black v. State, 630 So.2d 609 (Fla. 1st DCA 1993) (same). See also United States v. Calloway, 116 F.3d 1129 (6th Cir.1997) (officers executing a lawful search warrant in a residence may seize evidence of crime in plain view if incriminating character immediately apparent); United States v. Naugle, 997 F.2d 819 (10th Cir.1993) (officers lawfully executing search warrant can seize from residence items not listed in warrant which are apparently and immediately incriminating).
[10] See United States v. Rivera, 825 F.2d 152 (7th Cir.1987); Gilbert v. State, 789 So.2d 426 (Fla. 4th DCA 2001).
[11] See Illinois v. McArthur, 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001) (occupant of residence was arguably "seized" while warrant was being obtained to present him from destroying contraband in residence, held reasonable under exigent circumstances); U.S. v. Carter, 315 F.3d 651 (6th Cir.2003) (officers who saw contraband through open hotel door had exigent circumstances to enter room, arrest defendant and seize drugs); State of Louisiana v. Deary, 753 So.2d 200 (La.2000) (similar facts); State v. Hughes, 233 Wis.2d 280, 607 N.W.2d 621 (2000).
[12] State of Louisiana v. Brisban, 809 So.2d 923 (La.2002).
[13] See State v. Garcia, 866 So.2d 124 (Fla. 4th DCA 2004); Gnann v. State, 662 So.2d 406 (Fla. 2d DCA 1995).
[14] See United States v. Reid, 226 F.3d 1020 (9th Cir.2000); Klosieski v. State, 482 So.2d 448 (Fla. 5th DCA 1986); State v. Parker, 399 So.2d 24 (Fla. 3d DCA 1981). See also United States v. Lewis, 231 F.3d 238 (6th Cir.2000);
[15] See Ensor v. State, 403 So.2d 349 (Fla.1981); Gilbert v. State, 789 So.2d 426 (Fla. 4th DCA 2001). See also G & G Jewelry, Inc. v. City of Oakland, 989 F.2d 1093 (9th Cir.1993); United States v. Rivera, 825 F.2d 152 (7th Cir.1987).